IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELI D. NICHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 08-CV-575-TCK-FHM |
| ) | |
| SCOTT LOWERY LAW OFFICE, P.C., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 25).

**I.     Factual Background**

Plaintiff Sheli Nichols ("Plaintiff") was first employed by Defendant Scott Lowery Law Office, P.C. ("Defendant") from April to October 2004. Plaintiff subsequently reapplied and was rehired by Defendant on January 30, 2006 as a collector. Plaintiff worked in this position until May 15, 2006, when she was promoted to a Junior Lead. As a Junior Lead, Plaintiff supervised a group of collectors and was responsible for ensuring that the collectors met their monthly production goals. The number of collectors assigned to Plaintiff fluctuated. Specifically, in April 2007, Plaintiff had approximately five collectors assigned to her. At some point between May and early June of 2007, a second franchise of collectors was assigned to Plaintiff. Plaintiff kept this second franchise until her employment with Defendant ended in October 2007, but the number of collectors within this franchise varied throughout this time period.

On March 17, 2007, Plaintiff was diagnosed with major depression, generalized anxiety disorder, and mild obsessive compulsive disorder. Plaintiff's therapist provided a medical certification, which stated that: (1) Plaintiff could work no more than forty (40) hours per week for

a period of one year; and (2) Plaintiff would need to be absent from work for weekly office appointments that would be phased into monthly appointments as her condition improved. Plaintiff thereafter submitted the medical certification along with a written request for intermittent leave under the Family and Medical Leave Act ("FMLA") on April 27, 2007. Prior to submitting this certification, Plaintiff discussed taking FMLA leave with Defendant's Human Resources Manager, Tricia Way ("Way"), who encouraged Plaintiff to take such leave.

Plaintiff's request for intermittent leave was approved, and, pursuant to such request, Plaintiff worked forty (40) or fewer hours every week from April 28, 2007 until her employment was terminated, with the two following exceptions: (1) Plaintiff worked 41.17 hours during the week of September 22, 2007; and (2) Plaintiff worked 44.03 hours during the week of October 6, 2007. Plaintiff testified that she was not specifically told to work more than forty (40) hours on these two occasions, but felt she needed to work additional hours in order to complete new reporting requirements that were imposed upon Junior Leads at that time.

On September 17, 2007, Plaintiff met with her supervisor, Ryan Stutzman ("Stutzman"), and expressed concerns to Stutzman about her ability to meet newly imposed reporting requirements and only work forty (40) hours a week. According to Plaintiff, Stutzman responded by telling her he "didn't give a damn" what she had to do and that she should sleep on the floor at the office if she had to. Plaintiff had another meeting with Stutzman on September 24, 2007 where she again expressed concerns about her workload, telling Stutzman she was overwhelmed with two teams of collectors and felt like he was trying to make her quit or find a reason to fire her. Plaintiff testified that Stutzman responded by stating that he did not have to have a reason to fire her. On October 1, 2007, Plaintiff had two meetings with Stutzman. During the first meeting, Stutzman questioned why

Plaintiff did not work the previous Sunday. Plaintiff testified that she told Stutzman she did not have to work on Sundays pursuant to her FMLA leave and that Stutzman replied by stating he would check with the Human Resources Director at the Denver, Colorado office. Later in the day on October 1, 2007, Plaintiff met with Stutzman, Graham Parker, associate attorney, and Heather Penson, Human Resources Clerk. At this meeting, Plaintiff was informed that the smaller of her two teams would be supervised by another individual because she had expressed concerns about feeling overwhelmed with her workload. This left Plaintiff supervising five collectors.

On October 11, 2007, Howard Grinsteiner ("Grinsteiner"), Defendant's Director of Operations, sent an e-mail to Plaintiff, expressing concerns about her group's performance. Specifically, Grinsteiner asked Plaintiff why her group was "down money" despite having four additional collection days during that month, to which Plaintiff responded by explaining what her collectors were doing. Grinsteiner replied to Plaintiff's e-mail, noting that her response was "a start," but further inquiring into Plaintiff's "level of leadership" and questioning the degree to which Plaintiff was reviewing her collectors' work. Plaintiff testified it was apparent that her collectors were not going to meet their production goals for the month.

On October 27, 2007, Plaintiff was informed by John Harker and Stutzman that Defendant was reducing its workforce, and she was being terminated as part of this reduction. Two other employees were terminated at the same time as Plaintiff – namely, Tim Penson (Junior Lead) and Heather Penson (Human Resources Assistant).

Plaintiff filed suit against Defendant on September 5, 2008 in the District Court of Tulsa County, alleging claims of discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112 *et. seq* ("ADA"), and claims of retaliation and interference under the FMLA. The case was

subsequently removed to this Court on September 26, 2008. Defendant now moves for summary judgment as to all of Plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III. ADA Discrimination Claim

The ADA prohibits employment discrimination against any "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Plaintiff argues that Defendant violated the ADA by failing to provide her with a reasonable accommodation for her disability and discriminating against her on the basis of her disability. (Pet. ¶ 14.) Because Plaintiff presents circumstantial rather than direct evidence of discrimination, the Court must analyze her ADA discrimination claim under the burden-shifting framework described in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). Under this framework, Plaintiff must first establish a prima facie case of

4

discrimination, *id.*, and demonstrate the following: (1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she suffered discrimination by Defendant because of that disability. *See Kellogg v. Energy Safety Servs., Inc.*, 544 F.3d 1121, 1124 (10th Cir. 2008). If Plaintiff is able to establish a prima facie case, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its action. *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). "Should [D]efendant carry this burden, [P]laintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by [D]efendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotations omitted).

Defendant first argues that Plaintiff's ADA discrimination claim fails because she is unable to demonstrate the first element of her prima facie case – namely, that she is "disabled," as that term is defined by the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *See* 42 U.S.C. § 12192(2); *McMullin v. Ashcroft*, 337 F. Supp. 2d 1291, 1294 (D. Wyo. 2004) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478 (1999)); *see Ellenberg v. New Mexico Military Inst.*, 572 F.3d 815, 824 (10th Cir. 2009) (noting that Plaintiff must "(1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities" in order to satisfy the ADA's definition of disability).[1] "The term 'major

---

[1] Whether Plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law for the court to decide. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003).

life activities' is not defined in the statute, but a regulation promulgated by the Equal Employment Opportunity Commission defines it as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Kellogg*, 544 F.3d at 1124-25 (citing 29 C.F.R. § 1630.2(i)). In this case, Plaintiff asserts that her depression, anxiety disorder, and obsessive compulsive disorder substantially impair her ability to perform the major life activity of working. As noted above, working is a "major life activity" for the purposes of the ADA. Therefore, the critical question is whether Plaintiff's condition "substantially limits" the major life activity of working.[2]

In order for an impairment to be "substantially limiting," a plaintiff must: (1) be unable to perform a major life activity that the average person in the general population can perform; or (2) be significantly restricted as to the conditions, manner, or duration under which the plaintiff can perform a particular major life activity as compared to the average person. *Pack v. Kmart Corp.*,

---

Determining whether the impairment substantially limits the major life activity is a question of fact for the jury, although a court is not precluded from deciding this issue on a motion for summary judgment. *Id.*

[2] Congress has recently enacted major changes to the ADA in the ADA Amendments Act of 2008 ("ADAAA"). Although the Tenth Circuit has yet to officially weigh in on whether the ADAAA applies retroactively, it has noted that "other courts consistently have held that the ADAAA does not apply to conduct occurring before its enactment." *Durham v. McDonald's Rest. of Okla., Inc.*, No. 08-5135, 2009 WL 1132362, *1 n.2 (10th Cir. April 28, 2009) (unpublished) (citing *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009) and *Moran v. Premier Educ. Group, LP*, 559 F. Supp. 2d 263, 271-72 (D. Conn. 2009) (collecting cases)); *see also Hennagir v. Utah Dept. of Corr.*, 587 F.3d 1255, n.2 (10th Cir. 2009) (noting that the ADA was substantially amended by the ADAAA in 2008 but stating that it is "unnecessary to consider the effect of those changes" because plaintiff was terminated in 2005). The Court therefore declines to apply the ADAAA to this case. Instead, the Court relies on the ADA and case law interpreting same.

6

166 F.3d 1300, 1305 (10th Cir. 1999); *McMullin*, 337 F. Supp. 2d at 1295. A court should consider three factors in determining whether an individual is "substantially limited" in a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or the expected long term impact of or resulting from the impairment. *Pack*, 166 F.3d at 1305.

Plaintiff maintains that her impairment substantially limits her in the major life activity of working because the medical certification submitted by her therapist stated that Plaintiff was unable to work more than forty (40) hours per week without worsening her condition. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 8.) In order to establish that an impairment substantially limits the major life activity of working, a plaintiff must show significant restrictions "in the ability to perform either a class of jobs or a broad range of jobs in various classes" as compared to the average person in the general population. *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994); *McMullin*, 337 F. Supp. 2d at 1296.

Plaintiff has failed to submit any evidence that her impairment precluded her from performing a class of jobs or broad range of jobs in various classes, instead offering only a few sentences of argument and citing to her therapist's certification that she could not work more than forty (40) hours a week. Standing alone, however, Plaintiff's inability to work more than forty (40) hours a week is insufficient to demonstrate that Plaintiff is substantially limited in the major life activity of working. *See, e.g., Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (stating that an inability to work overtime – *i.e.*, more than forty (40) hours a week – is not a substantial limitation on the ability to work); *Kellogg v. Union Pac. R.R. Co.,* 233 F.3d 1083, 1087-88 (8th Cir. 2000) (affirming summary judgment because employee who could not work more than forty hours

per week was not substantially limited in his ability to work) ("An employee is not substantially limited in the major life activity of working by virtue of being limited to a forty-hour work week.") (as cited in *Vidacak v. Potter*, No. 02-7158, 2003 WL 22810462, *3 (10th Cir. Nov. 26, 2003) (unpublished)). Therefore, without additional evidence that Plaintiff's depression, anxiety disorder, and obsessive compulsive disorder prohibited her from performing a "class of jobs or a broad range of jobs in various classes" as compared to the average person in the general population, *Bolton*, 36 F.3d at 942, Plaintiff has not demonstrated that her condition substantially limited her in the major activity of working. *See Glover v. NMC Homecare, Inc.*, 106 F. Supp. 2d 1151, 1167 (D. Kan. 2000) (granting summary judgment on same basis). Plaintiff has accordingly failed to show that there exists a genuine issue of material fact that she has a "disability" under the ADA, rendering summary judgment proper as to this claim.[3]

## IV.   FMLA Retaliation Claim

Plaintiff claims that she was terminated in retaliation for taking intermittent leave under the FMLA, in violation of 29 U.S.C. § 2615(a)(2). "Retaliation claims under the FMLA are subject to the burden-shifting analysis of [*McDonnell Douglas*]." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citations omitted). Under such framework, Plaintiff must first make a prima facie claim of FMLA retaliation. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). The burden then shifts to Defendant to offer a legitimate, non-retaliatory reason for the adverse employment action. *Metzler*, 464 F.3d at 1170. If Defendant is able to articulate such a reason, Plaintiff must then demonstrate that there is a genuine dispute of

---

[3]   Plaintiff makes no argument that she has a "record of disability" or was "regarded as disabled" under ADA's definition of disability. The Court therefore limits its discussion to subsection (A) of the ADA's definition of disability. *See* 42 U.S.C. § 12192(2)(A).

8

material fact as to whether Defendant's proffered non-discriminatory reason was pretextual. *Id.* at 1172.

To demonstrate a prima facie FMLA retaliation claim, Plaintiff must show that: (1) she engaged in a protected activity; (2) Defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *See Campbell*, 478 F.3d at 1287. It is undisputed that Plaintiff engaged in protected activity (taking intermittent leave pursuant to the FMLA) and was the subject of an adverse action (termination). The Court is left to determine whether Plaintiff is able to demonstrate a causal connection between her use of FMLA leave and the termination of her employment. Defendant argues summary judgment is proper because Plaintiff is unable to make such a connection.

"A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006). "Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time." *Id.* "Otherwise, the plaintiff must offer additional evidence to establish causation." In this case, the temporal proximity between Plaintiff's use of intermittent leave under the FMLA, occurring in April 2007, and her termination in October 2007 is insufficient, by itself, to establish the requisite causal connection. *See id.* (stating a seven month period will not, by itself, establish causation); *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (holding that a three-month period, standing alone, will not suffice to establish causal connection).

However, the Tenth Circuit has explained that "a pattern of retaliatory conduct [that] begins soon after the [protected activity] and only culminates later in actual discharge" may sometimes preclude summary judgment notwithstanding the absence of close temporal proximity between the protected activity and the employer's ultimate decision to terminate the employee. *Marx v. Schnuck Mkts., Inc.,* 76 F.3d 324, 329 (10th Cir. 1996); *see also Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008). Although Plaintiff fails to explicitly reference this statement of law in her response to Defendant's Motion for Summary Judgment, Plaintiff's causal connection argument relies on a pattern of allegedly retaliatory conduct. Specifically, Plaintiff argues the following demonstrates a causal connection between her protected conduct and her termination: (1) Plaintiff complained on "numerous occasions" about not being able to complete her workload given her FMLA restrictions; (2) Plaintiff was "derisively admonished" by Stutzman regarding her FMLA restrictions; (3) Plaintiff had a discussion with Stutzman about her FMLA restrictions in conjunction with her absence from work on a Sunday; (4) Subsequent to said discussion, Plaintiff's workload was reduced; (5) As part of this reduction, a franchise was taken away from Plaintiff, which allegedly would have reduced her commission had she not been terminated; (6) Plaintiff had more work assigned to her after she went on FMLA leave; and (7) Plaintiff was given a "bogus reason for her termination," as evidenced by a classified advertisement in the Tulsa World, wherein Defendant allegedly sought candidates for job openings.[4] (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 12.)

The vast majority of the instances cited by Plaintiff occurred months after Defendant granted her request for a reduced schedule under the FMLA. Specifically, the "numerous occasions"

---

[4] As explained more fully in footnote 9, *infra*, there is no evidence in the record supporting the existence of such a Tulsa World advertisement.

wherein Plaintiff complained about her workload mainly occurred in September 2007.[5] Similarly, Stutzman's "admonishments," as cited by Plaintiff, occurred in September 2007.[6] Plaintiff's conversation with Stutzman regarding the fact that she did not have to work on Sundays under her FMLA restrictions occurred on October 1, 2007, as did the meeting wherein Plaintiff's workload was reduced by removing one team from her supervision.[7] Finally, the allegedly "bogus reason" for Plaintiff's termination was given to her on October 27, 2007.[8]

Without addressing the legitimacy of these allegations and whether they are truly retaliatory in nature, the Court finds the timing of these events defeats Plaintiff's argument that such conduct establishes a causal connection between her protected activity and her termination. Plaintiff's

---

[5]   (*See* Pl's Resp. to Def.'s Mot. for Summ. J. 6 (citing September 17, 2007 conversation with Stutzman wherein she expressed her concerns about being able to work newly assigned hours under her work schedule); Pl.'s Resp. to Def.'s Mot. for Summ. J. 3 (citing September 24, 2007 meeting with Stutzman where Plaintiff discussed her workload); Pl.'s Resp. to Def.'s Mot. for Summ. J. 5 (citing Plaintiff's verbal requests for reduced workload to Stutzman and Way); EEOC Questionnaire., Ex. 12 to Pl.'s Resp. to Def.'s Mot. for Summ. J. 2 (indicating said statements to Stutzman and Way were made on July 5, 2007 and September 17, 2007).)

[6]   (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 5 (citing September 17, 2007 meeting with Stutzman wherein, in response to Plaintiff's concerns about being able to work the new hours, Stutzman allegedly said that it did not matter if Plaintiff only got four hours of sleep and that she could sleep at the office); Pl.'s Resp. to Def.'s Mot. for Summ. J. 3 (citing September 27, 2007 meeting with Stutzman wherein Stutzman allegedly "acted indifferent to Plaintiff's FMLA restrictions and stated that he could fire her at any time if he wanted to").)

[7]   (*See* Pl.'s Dep., Ex. 14 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 111:16-22 (stating meeting with Stutzman regarding whether Plaintiff had to work on Sunday occurred on October 1, 2007); Pl.'s Dep., Ex. 15 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 20-23 (indicating one team was removed from Plaintiff's supervision on October 1, 2007 in order to reduce her workload).)

[8]   (*See* Pl.'s Dep., Ex. 24 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 91:16-25 – 92:1-11.)

FMLA request was submitted and granted in April 2007 – approximately five months *prior* to the conduct listed above. The passage of five months between Plaintiff's protected activity and this "pattern" of conduct suggests that there is no causal relationship between the two. *See Semsroth v. City of Wichita*, 548 F. Supp. 2d 1203, 1212 (D. Kan. 2008) (noting that "acts beginning a pattern of retaliation must share close temporal proximity with protected activity"). Indeed, other courts have rejected similar arguments on the same basis. *See Hinds*, 523 F.3d at 1204 (rejecting plaintiff's argument that pattern of retaliatory conduct demonstrated causal connection when said conduct did not occur until over three months after protected activity); *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004) (finding that plaintiff's alleged pattern of retaliatory conduct could not establish causal connection element when the pattern "did not begin soon after [plaintiff] engaged in protected activity, as almost four months elapsed between [the protected activity and the beginning of the alleged pattern of retaliatory conduct]").

Further, although two of the cited events by Plaintiff occurred prior to September 2007, the Court is unpersuaded that these two instances, whether standing alone or in conjunction with the conduct occurring five months after the protected activity, establish the necessary causal connection. First, Plaintiff claims her workload increased after taking intermittent leave under the FMLA. Plaintiff fails to provide a specific time period for this increased workload in her briefing, but it appears that Plaintiff was assigned an additional franchise of collectors in late May or early June. (*See* Pl.'s Dep., Ex. 7 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 69:20-22.) However, Plaintiff fails to provide any evidence supporting her assertion that the assignment of additional collectors was somehow "retaliatory" in nature. The evidence in the record – namely, Plaintiff's deposition testimony – instead generally indicates that the number of collectors under a Junior Lead fluctuated.

Without supporting evidence or argument, the Court is unpersuaded that the addition of a franchise is retaliatory in nature so as to establish a pattern of retaliatory conduct.[9]

Second, the Court is unpersuaded that Plaintiff's July 2007 comments to Stutzman and Way, wherein she expressed concerns about her workload, establish the beginning of a pattern of retaliatory conduct so as to support the causal connection element. Plaintiff provides no details regarding what she said to Stutzman and Way. And, perhaps more importantly, nor does she provide any information as to how Stutzman and Way responded to such concerns. Without additional explanation and supporting evidence, the Court is unconvinced that Plaintiff's July 2007 comments to Stutzman and Way were retaliatory in nature. The Court therefore finds that Plaintiff has not demonstrated the third element of her prima facie case – namely, that there exists a causal connection between the protected activity and the adverse action. *See Campbell*, 478 F.3d at 1287. Summary judgment is therefore proper as to Plaintiff's FMLA retaliation claim.

## V.     FMLA Interference Claim

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Metzler*, 464 F.3d at 1180 (citing 29 U.S.C. § 2612(a)(1)). To prevail on an interference claim, Plaintiff must demonstrate: (1) that she was entitled to FMLA leave; (2) that some adverse action by Defendant interfered with her right to take FMLA leave; and (3) that Defendant's action was related to the exercise or attempted exercise of her FMLA rights." *Id.* (citing *Jones v. Denver Public Schools*, 427 F.3d 1315, 1319

---

[9] The Court also notes that Plaintiff argues the addition of collectors was retaliatory while simultaneously arguing that the subsequent removal of a group of collectors from her supervision was retaliatory. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 12.) This internal inconsistency further undermines Plaintiff's argument.

(10th Cir. 2005)). "Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden-shifting analysis does *not* apply to interference claims." *Metzler*, 464 F.3d at 1180 (internal citations omitted). "An employer can defend the claim, however, by showing that the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159-60 (10th Cir. 2009) (internal quotations and citations omitted).

Reviewing the record as a whole, the Court concludes that Defendant has met its burden that no genuine issue of material fact exists with respect to its reasons for terminating Plaintiff's employment. *See Campbell*, 478 F.3d at 1289 (affirming grant of summary judgment in favor of employer on FMLA interference claim where no genuine issues of fact existed concerning whether employer would have fired employee regardless of leave). The record demonstrates that Defendant decided to terminate Plaintiff's employment – and the employment of two other individuals – as a result of its decision to reduce its workforce. The record further indicates that Plaintiff was selected as a part of this reduction in force because of recent issues with her group's productivity. Plaintiff testified that Grinsteiner, Defendant's Director of Operations, expressed concerns about the performance of Plaintiff's collectors and her leadership abilities in October 2007. Plaintiff also conceded that it was apparent at this point that her collectors were not going to meet their production goals for the month. Further, in October 2006, some of Plaintiff's collectors complained that she was uncooperative, gruff, and had a poor attitude. Plaintiff fails to direct to the Court to any countervailing evidence demonstrating that Plaintiff's termination was the result of her FMLA

restrictions instead of Defendant's reduction in force.[10]  Accordingly, the Court grants summary judgment as to Plaintiff's FMLA interference claim.

## VI. Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. 25) is GRANTED.  A separate judgment will be entered forthwith.

**IT IS SO ORDERED this 7th day of January, 2010.**

**TERENCE KERN**
**Senior United States District Judge**

---

[10] Plaintiff does argue that "Defendant's assertion of reduction in force is belied by the job posting placed in the Tulsa World by Defendant on [sic] about November 25, 2007." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7.)  In support of this contention, Plaintiff cites to Exhibit 25 of her response brief.  However, the Court is unable to read any part of this exhibit, as the print is too light and therefore illegible.  The Court requested a readable copy of Exhibit 25 from Plaintiff's counsel, but all subsequently submitted copies were of the same poor quality. Accordingly, because Exhibit 25 is unreadable, Plaintiff's contention that the Tulsa World posting contradicts Defendant's articulated reason for her discharge is unsupported and therefore will not be considered by the Court.